**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

LORRAINE FIGUEROA

Plaintiff,

v.

AT HOME GROUP, INC., STEVE BARBARICK, WENDY A. BECK, PAULA BENNETT, LEWIS L. BIRD III, JOHN BUTCHER, ELISABETH B. CHARLES, JOANNE C. CREVOISERAT, PHILIP L. FRANCIS, KENNETH SIMRIL, and LARRY D. STONE,

Defendants.

Civil Action No.

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**JURY TRIAL DEMANDED**

Plaintiff Lorraine Figueroa ("Plaintiff") by and through her undersigned attorneys, brings this action on behalf of herself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by At Home Group, Inc. ("At Home" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning At Home and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against At Home and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of At Home to Hellman & Friedman, LLC ("Hellman & Freidman") ("Proposed Transaction")

2. On May 6, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Hellman & Friedman. Pursuant to the terms of the Merger Agreement the Company's shareholders will have the right to receive $36.00 in cash per share owned. (the "Merger Consideration")

3. On June 2, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC on (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against At Home and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to At Home shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of At Home shares.

9. Defendant At Home is incorporated under the laws of Delaware and has its principal executive offices located at 1600 East Plano Parkway, Plano, Texas, 75074. The Company's common stock trades on the New York Stock Exchange under the symbol "HOME."

10. Defendant Steve Barbarick ("Barbarick") is and has been an At Home director at all times during the relevant time period.

11. Defendant Wendy A. Beck ("Beck") is and has been an At Home director at all times during the relevant time period.

12. Defendant Paula Bennett ("Bennett") is and has been an At Home at all times during the relevant time period.

13. Defendant Lewis L. Bird III ("Bird") is and has been Chairman of the Board and Chief Executive Officer ("CEO") of At Home at all times during the relevant time period.

14. Defendant John Butcher ("Butcher") is and has been an At Home director at all times during the relevant time period.

15. Defendant Elisabeth B. Charles ("Charles") is and has been an At Home director at all times during the relevant time period.

16. Defendant Joanne C. Crevoiserat ("Crevoiserat") is and has been an At Home director at all times during the relevant time period.

17. Defendant Philip L. Francis ("Francis") is and has been an At Home director at all times during the relevant time period.

18. Defendant Kenneth Simril ("Simril") is and has been an At Home director at all times during the relevant time period.

19. Defendant Larry D. Stone ("Stone") is and has been an At Home director at all times during the relevant time period.

20. Defendants Barbarick, Beck, Bennett, Bird, Butcher, Charles, Crevoiserat, Francis, Simril, and Stone are collectively referred to herein as the "Individual Defendants."

21. The Individual Defendants, along with Defendant At Home, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

22.     At Home is a leading home décor superstore with more than 200 large format stores. They are focused on providing the broadest assortment of products to suit every room, in every style, for every budget. At Home offers up to 50,000 on-trend home products to fit any budget or style, from furniture, mirrors, rugs, art and housewares to tabletop, patio and seasonal decor. At Home is headquartered in Plano, Texas, and currently operates 226 stores in 40 states.

### The Company Announces the Proposed Transaction

23.     On May 6, 2021, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> PLANO, Texas--(BUSINESS WIRE)--At Home Group Inc. (NYSE: HOME), the home décor superstore, today announced that it has entered into a definitive agreement to be acquired by funds affiliated with Hellman & Friedman (H&F), a premier global private equity firm, in an all-cash transaction valued at $2.8 billion, including the assumption of debt.
>
> Under the terms of the agreement, At Home stockholders will receive $36.00 per share in cash, which represents a premium of approximately 17% to the Company's closing stock price of $30.67 on May 4, 2021, the last trading day prior to media speculation regarding a possible transaction, and a premium of approximately 25% to the 30-day volume weighted average share price.
>
> *        *        *
>
> **Approvals and Timing**
>
> The transaction was negotiated on behalf of At Home by a Special Committee of its Board of Directors composed entirely of independent directors with the assistance of independent financial and legal advisors. Following the Special Committee's unanimous recommendation, At Home's Board of Directors unanimously approved the merger agreement and has recommended that At Home's stockholders adopt and approve the merger agreement and the transaction.

> The transaction is expected to close in the third quarter of calendar year 2021, subject to the satisfaction of customary closing conditions, including the approval of At Home's stockholders and expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976. The transaction is not subject to a financing condition. Upon completion of the transaction, At Home will become a privately-held company and At Home's shares will no longer trade on The New York Stock Exchange.
>
> Under the terms of the agreement, At Home may solicit alternative acquisition proposals from third parties during a 40-day "go-shop" period following the date of execution of the merger agreement. There can be no assurances that the "go-shop" will result in a superior proposal. At Home does not intend to disclose developments related to the solicitation process until it determines whether such disclosure is appropriate or is otherwise required. The agreement provides H&F with a customary right to match any superior proposal.
>
> **Advisors**
>
> Goldman Sachs & Co. LLC is serving as exclusive financial advisor and Fried, Frank, Harris, Shriver & Jacobson LLP as legal counsel to the Special Committee. Guggenheim Securities, LLC is serving as financial advisor and Simpson Thacher & Bartlett LLP as legal counsel to Hellman & Friedman.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

24. On June 2, 2021, the Company authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

25. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding the Company's Financial Projections**

26. The Proxy Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

27. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

28. In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

29. Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

GAAP measures, including: (i) Gross Profit; (ii) Operating Income; (iii) Adjusted EBITDA and (iv) Unlevered Free Cash Flow.

30. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding Goldman Sachs' Financial Opinion**

31. The Proxy Statement contains the financial analyses and opinion of Goldman Sachs & Co. LLC ("Goldman Sachs") concerning the Proposed Transaction, but fails to provide material information concerning such.

32. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) the Company's terminal values; (ii) the inputs and assumptions underlying Goldman Sachs' use of perpetual growth rates of 2.0%-3.0%; (iii) the inputs and assumptions underlying Goldman Sachs' use of the range of discount rates ranging from 9.00% to 11.00%; (iv) the ranges of illustrative enterprise values for the Company; and (v) the number of fully diluted outstanding shares of the Company's common stock.

33. With respect to Goldman Sachs's *Illustrative Present Value of the Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the basis for Goldman Sachs' application of enterprise value to future next twelve months Adjusted EBITDA multiples of 6.0x to 9.0x; and (ii) the basis for Goldman Sachs' use of an illustrative discount rate of 10.7%.

34. With respect to Goldman Sachs's *Premiums Paid Analysis*, the Proxy Statement fails to disclose: (i) the specific transactions observed in the analysis; (ii) the premiums paid for

the transactions observed; (iii) the closing dates of the transactions observed; and (iv) the enterprise values for the transactions.

35. With respect to Goldman Sachs's *Selected Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the transactions observed.

36. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

37. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

**COUNT I**

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

40.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

41.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

42.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

43.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading.

The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

44. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

45. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

46. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

47. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

48. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49. The Individual Defendants acted as controlling persons of At Home within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of At Home, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

52. In addition, as set forth in the Proxy Statement sets forth at length and described

herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 9, 2021

Respectfully submitted,

By: *<u>/s/ Joshua M. Lifshitz</u>*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*